# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

IN THE MATTER OF CHESTER J.
MARINE, LLC, AS OWNER AND
OPERATOR OF THE M/V CECILE A.
FITCH, OFFICIAL NO. 297854

CIVIL ACTION NO. 20-214-JWD-SDJ

### CONSOLIDATED WITH

IN THE MATTER OF YAZOO RIVER
TOWING, INC., AS OWNER AND
OPERATOR OF THE TOW BOAT MELVIN
L. KING, AND ITS ENGINES,
MACHINERY, GEAR, TACKLE, APPAREL
AND ITS SKIFF AND ALL OTHER
APPURTENANCES, PETITIONING FOR
EXONERATION FROM AND/OR
LIMITATION OF LIABILITY

CIVIL ACTION NO. 20-252-JWD-SDJ
(Ruling applies to this case only)

### RULING ON MOTION TO BIFURCATE

Before the Court is the *Motion to Bifurcate* (Doc. 54) brought by claimant Charlotte

Standridge, individually and as personal representative of the Estate of Lloyd Standridge, Ashley

Standridge and Aaron Standridge ("Standridge"). It is opposed by Yazoo River Towing, Inc.

("Yazoo") (Doc. 60) and Chester J. Marine, LLC ("CJM") (Doc. 61) (collectively, the

"Limitation Plaintiffs"). Standridge filed a reply brief. (Doc. 63.) Oral argument is not necessary.

The Court has carefully considered the law, the facts in the record and the arguments and

submissions of the parties and is prepared to rule. For the following reasons, the motion is

granted in part and denied in part.

1

## I.     BACKGROUND

This case involves a maritime casualty which occurred on February 10, 2020 in which Lloyd Standridge and Norsalus N. C. Jackson were killed. (Doc. 54-1 at 1–2.) According to Standridge, the deaths occurred following a collision between the M/V Cecile A. Fitch (owned by CJM) and the Melvin L. King (owned by Yazoo). (*Id*. at 1–2.)[1]

Yazoo describes the collision differently: as between a skiff under the command of pilot Lloyd Ray Standridge and one or more barges being pushed by the M/V Cecile A. Fitch which occurred on the Gulf Intracoastal Waterway, Port Allen Route. (Doc. 60 at 1.)

CJM gives yet a third version of the accident, "categorically den[ying] that it[s vessel] was involved in a collision with the Melvin L. King's skiff." (Doc. 61 at 3.) CJM alleges that, after taking the skiff to Jack Miller's Landing/J's Lounge, Lloyd Standridge and other crew members of the M/V Melvin L King, consumed alcohol. (*Id*. at 2.) While returning, the skiff "collided with an object in the water" or was "swamped" due to overloading. (*Id*.)

Standridge sued CJM, Yazoo, and others in state court and requested a jury trial. (Doc. 54-1 at 2; Doc. 61 at 3.) CJM and Yazoo filed separate limitation of liability actions in this Court, (Case No. 20-cv-214, Doc. 1; Case No. 20-cv-252, Doc. 1), which were consolidated on July 17, 2020, (Case No. 20-cv-214, Doc. 21). Following the filing of these two actions, the state court suit was stayed. (Case No. 20-cv-214, Doc. 6; Case 20-cv-252, Doc. 5-2.)

Standridge brought claims in both limitation actions, (Case No. 20-cv-214, Doc. 23; Case No. 20-cv-252, Doc. 13), demanding a jury trial in each. Shayla Wright ("Wright"), Norsalus Jackson's sister and the personal representative of his estate, also filed a claim in both limitation proceedings. (Case No. 20-cv-214, Doc. 51; Case No. 20-cv-252, Doc. 19.)  Wright did not

---

[1] In her Answer and Claim, Standridge also claims the fault of LeBouef Bros. Towing, Inc. and its vessel, the M/V American Freedom. (Doc. 13 at 10, ¶¶ 8-9.) LeBouef is not a party to these proceedings.

demand a jury trial in either. CJM asserted a claim against Yazoo, (Case No. 20-cv-214, Doc. 20 at 10–11); Yazoo filed a claim against CJM and the M/V Cecile A. Fitch *in rem* (*id.*, Doc. 25 at 8–12); CJM and Yazoo filed third party claims against Jack Miller's Landing, LLC d/b/a Jack Miller's Landing and J's Lounge ("JML"), the owner of the bar where Lloyd Standridge and other members of the crew allegedly became intoxicated before the accident, (Docs. 68 and 69).

Only Standridge filed suit in state court and only Standridge requested a jury in the limitation proceeding. According to Standridge, "although [the] other parties in this consolidated limitation action did not assert their rights to a jury trial, . . . Standridge . . . did. To effectuate those rights, . . . Standridge . . . now requests that the Court bifurcate these consolidated Limitation actions." (Doc. 54-1 at 2.)

## II.    SUMMARY OF ARGUMENTS OF THE PARTIES

Standridge acknowledges that the Court must decide the issue of the negligence of the Limitation Plaintiffs, Yazoo and CJM. (*Id.* at 5.) If one or both are found negligent, this Court must then decide whether they are entitled to limit their liability. (*Id.*) But, after deciding the limitation issues, Standridge argues she should "be allowed to proceed in state court and have a jury 'determine the fault of additional parties, the relative degrees of fault and damages.' " (*Id.* (quoting *In re Complaint of Bergeron Marine Serv., Inc.*, No. 93-1845, 1994 WL 236374 at *1 (E.D. La. May 24, 1994)).) Indeed, this proposed bifurcation, according to Standridge, is the "preferred approach, at least within federal district courts of the Fifth Circuit[.]" (*Id.* at 4 (quoting *In re Mississippi Limestone Corp.*, No. 09-36, 2010 WL 4174631 at *3 (N.D. Miss. Oct. 7, 2010)).)

In support of this position, she also points the Court to, among others, two Eastern District of Louisiana cases authored by Judge Sarah Vance: *In re Suard Barge Services, Inc.*, No.

96-3185, 1997 WL 358128 (E.D. La. June 26, 1997) and *Archer Daniels Midland Co. v. M/T American Liberty*, No. 19-10525, 2020 WL 1889123 (E.D. La. Apr. 16, 2020). Standridge insists that " 'once limitation is denied, *it is up to the claimants rather than the court whether the [federal] proceedings will continue or whether the injunction will be dissolved to permit the resumption of other [state court] actions.*'" (Doc. 54-1 at 3–4 (alterations and emphasis in original) (*quoting In re Mississippi Limestone Corp.*, 2010 WL 4174631, at *3).) Standridge maintains that it is of no moment that other claimants made a Federal Rule of Civil Procedure 9(h) [2] designation since Rule 9(h) is *claim-specific* and such designation by another claimant does not bind her. (*Id*. at 5–6.)

Yazoo counters that Standridge has "fail[ed] to cite controlling law on the issue of bifurcation and further ignore[d] the facts of this case." (Doc. 60 at 1.) Bifurcation is not "a favored approach" in the Fifth Circuit, (*id*.), but "should be used sparingly." (*Id*. at 4 (quoting *In re Bertucci Contracting Co., LLC,* No. 12-1783, 2015 WL 114174, at *2 (E.D. La. Jan. 8, 2015)).) It should not be used unless the issues to be tried separately are "so distinct and separate from the others that a trial of it alone may be had without injustice." (*Id*. (quoting *McDaniel v. Anheuser-Busch, Inc*., 987 F.2d 298, 305 (5th Cir. 1993)).)

Furthermore, Yazoo contends that because Standridge will have to prove causation and damages as well as negligence at the limitation trial, "separate trials will 'counter the ends of justice and cause multiplication of proceedings, inconvenience to the parties . . . as well as the expense involved in preparing for separate proceedings.'" (*Id*. at 5–6 (quoting *In re Diamond B Marine Servs., Inc.*, No. 99-1346, 2000 WL 37987, at *2 (E.D. La. Jan. 14, 2000)).) Yazoo

---

[2] Federal Rule of Procedure 9(h) allows a party designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, if a "claim for relief is within the admiralty or maritime jurisdiction and also on the court's subject-matter jurisdiction on some other ground[.]"

stresses that Wright, the other death claimant, "does not wish to have her claims bifurcated and wishes for her claims to be decided in a federal bench trial before *this* Court[.]" (*Id*. at 7 (emphasis in original).) Therefore, to limit discovery or trial in Standridge's case to issues of negligence and limitation of liability would be inefficient, impractical, unnecessarily costly, and unjust. (see *Id*. at 5–6.)

Finally, Yazoo contends that the request for bifurcation is premature since Standridge is not entitled to have her damages claim tried in state court until the limitation of liability case has been completed and then only if limitation is denied or there is a stipulation by all claimants that the value of all claims is less than the value of the respective limitation funds. (*Id*. at 3, 9–11 (citations omitted).) There is no such stipulation in this case. (*Id*. at 3.)

Like Yazoo, CJM argues that Fifth Circuit precedent is clear that there are only two circumstances in which a state court may try the issue of damages before the Limitation Court tries the issues of exoneration and limitation: first, "when the total value of **all** claims is less than the value of the vessel" and second, "when **all** claimants stipulate that the federal court has exclusive jurisdiction over the issue of limitation and they will not seek to enforce an award in excess of the value of the vessel until the limitation issue has been decided by the federal court." (Doc. 61 at 6 (emphasis in original) (citing *Odeco Oil & Gas Co. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996)).) Neither circumstance is present here.

CJM maintains that Standridge's reliance on *In re Suard Barge Services, Inc.*, is misplaced because, in that case, unlike the present one, the personal injury claimant made the appropriate stipulations permitting her claim to be bifurcated from the limitation proceeding and her damages claims to be tried in state court. (*Id.* at 6–7.) Furthermore, because the court in *Suard* did not mention the Fifth Circuit's two prerequisites, "this omission has led other District

Courts [to] erroneously overlook the Fifth Circuit's requirements for bifurcating a limitation action." (*Id*. at 7.) CJM claims the proper interpretation of the Fifth Circuit's criteria for bifurcation is found in this court's decision in *In re Kirby Inland Marine, L.P.*, No.11-794, 2013 WL 147807 (M.D. La. Jan. 14, 2013) (Brady, J). Furthermore, where there are multiple competing claimants, none of whom have given the appropriate stipulations, bifurcation would result in "separate, duplicative and expensive trials, which would be inconvenient and would not serve judicial economy." (*Id*. at 15 (quoting *In re Am. Boat Co. LLC,* No. 16-506, 2017 WL 2120067, at *2 (M.D. La. May 16, 2017) (Dick, J.)).)

CJM contends that Standridge's reliance on *Archer Daniels Midland* is likewise mistaken since it is clearly distinguishable ("involve[ing] a complicated fact pattern, multiple marine casualties, and fourteen parties – ten of which supported the personal injury claimants' Motion to Bifurcate."). (Doc. 61 at 16 (citing *Archer Daniels Midland*, 2020 WL 1889123, at *2).) Unlike that case, the present case has a relatively simple fact pattern. (*Id*.) Thus, to grant the motion would "subject CJM to duplicative and protracted litigation." (*Id*. at 17.)

In her reply memorandum, Standridge makes clear that she is not requesting a bifurcation of her claims now, but only after "a trial on the 'core' issues in limitation (negligence and privity/knowledge) takes place ***first***." (Doc. 63 at 1 (emphasis original).) Only if the exoneration/limitation trial results in a finding of fault on the part of one or both of the petitioners in limitation would such procedure then be appropriate. (*Id*. at 3.) Indeed, argues Standridge, this is precisely the procedure followed by Judge Vance in *Archer Daniels Midland*. (*Id*. at 3–5.)

### III. LEGAL STANDARD AND DISCUSSION

Federal Rule of Civil Procedure 42(b) allows a separate trial of any issue or claim "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b), The decision to bifurcate "is a matter within the sole discretion of the trial court." *First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992). In deciding whether to exercise that discretion,

> . . . courts must consider the justifications for bifurcation in relation to the facts of the individual case, giving particular consideration to the avoidance of prejudice, in order to determine if a separate trial is appropriate. *See Laitram* [*Corp. v. Hewlett-Packard Co*., 791 F. Supp. 113,] 114–15 [(E.D. La. 1992)], (noting that when determining whether to bifurcate, a court "must balance the equities" and "exercise its discretion on a case-by-case basis").

*Archer Daniels Midland*, 2020 WL 1889123, at *2 (alternation added) (explanatory parenthetical in original); *see also, In re Am. Boat Co. LLC,* 2017 WL 2120067, at *1 (citing *Laitram*, 791 F. Supp at 115). ("[C]ourts should balance equities before bifurcating issues.")

There is "an important limitation" on the court's discretion, however: "the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel*, 987 F.2d at 305 (quoting *Swofford v. B. & W., Inc.,* 336 F.2d 406, 415 (5th Cir. 1964)). Indeed, "[s]eparate trials . . . are the exception, not the rule", *Porter v. Milliken & Michaels, Inc.*, No. 99-0199, 2000 WL 1059849, at *2 (E.D. La. Aug. 1, 2000 (citing *McDaniel*, 987 F.2d at 304)); *see also Laitram*, 791 F. Supp. at 115; *Archer Daniels Midland,* 2020 WL 1889123, at *2. The court should exercise its discretion to grant bifurcation "sparingly". *In re Bertucci Contracting Co., LLC*, 2015 WL 114174, at *2.

The present motion for bifurcation comes in the context of a limitation of liability action which raises issues not found in some other litigation settings. The Limitation of Liability Act, 46 U.S.C. §§ 30501 – 30512, allows a vessel owner facing potential liability for a maritime

accident to file a petition in federal court to limit its liability. It further provides that if the

shipowner did not have "privity or knowledge" of the vessel's fault relative to the accident in

question, the owner's liability is limited to "the amount or value of the interest of such owner in

such vessel, and her freight then pending." 46 U.S.C. § 30505(a); 46 App. U.S.C. § 183(a).

> The limitation proceeding is therefore comprised of a two-step analysis: the court
> must first, determine whether the vessel's acts render it liable to the injured claimant
> and, second, whether the shipowner had knowledge or privity of these negligent
> acts. See generally Thomas J. Schoenbaum, 2 Admiralty and Maritime Law § 15.8
> (6th ed. 2018).

*In re Double C. Marine LLC*, No. 14-2273, 2019 WL 1495754, at *1 (W.D. La. Apr. 3, 2019).

> The burden of proof on these two points is as follows:

> First, the court must determine what acts of negligence or conditions of
> unseaworthiness caused the accident." [*Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10
> (5th Cir. 1976).] The damage claimants bear the initial burden of establishing the
> vessel owner's negligence. *See id*. "Second, the court must determine whether the
> shipowner had knowledge or privity of those same acts of negligence or conditions
> of unseaworthiness." *Id*. The vessel owner "bears the burden of proving lack of
> privity or knowledge." *Id*.

*Odfjell Chem. Tankers AS v. Herrera*, 471 F. Supp. 3d 790, 794 (S.D. Tex. 2020).

If, at the limitation trial, "liability is limited, [the Court] distributes the limited fund

among the claimants." *Lewis v. Lewis & Clark Marine, Inc*., 531 U.S. 438, 448, 121 S. Ct. 993,

1001, 148 L. Ed. 2d 931 (2001); *see also* Schoenbaum, *supra*, § 15.6 ("If the vessel owner is

found liable, but limitation is granted, the admiralty court distributes the limitation fund among

the damage claimants[.]") (citing *Beiswenger Enters. Corp. v. Carletta*, 86 F.2d 1032 (11th Cir.

1996)).

Under the Limitation of Liability Act, the Limitation Plaintiffs, CJM and Yazoo, "have a

right to a federal bench trial if 'the amount of the claims exceed[s] the value of the ship and

cargo,' and the vessel owner is 'seek[ing] to limit liability to the value of the ship and its cargo.'"

*In re Am. Boat Co. LLC*, 2017 WL 2120067, at *2 (quoting 14A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §3672 (4th ed. 2014)). Such is the case here.

On the other hand, the "saving-to-suitors clause," 28 U.S.C. § 1333(1), gives the wrongful death claimants (Standridge and Wright) "the option to request a state jury trial for personal injury claims involving the Jones Act and general maritime law." (*Am. Boat*, 2017 WL 2120067, at *2 (citing 28 U.S.C. § 1333). In this case, Standridge exercised that right and chose the option to sue in state court and requested a jury both there and in this proceeding. *See Chauvin v. Laredo Offshore Services, Inc.*, No. 97–3840, 1998 WL 88070, at *1 (E.D. La. Feb. 23, 1998) ("By filing suit in state court, the plaintiffs have clearly expressed their intention to pursue any maritime law claims in state court pursuant to the saving to suitors clause . . . an identifying statement in the complaint that it is brought pursuant to the saving to suitors clause is not a requirement to invoke the clause."); *Shelton v. Tidewater, Inc.*, No. 90–1845, 1990 WL 103658, at *3 (E.D. La. July 16, 1990) ("The clear and simple fact that plaintiffs filed suit in state court documents plaintiffs' intention to proceed in state court as recognized by the Savings to Suitors clause.") Wright did neither. As this Court explained,

> [U]nder § 1333's "saving to suitors" clause, the case may be brought in state or federal court. *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 204, 92 S. Ct. 418, 420–421, 30 L. Ed. 2d 383 (1971). What is "saved" to the suitor in § 1333 is not only the right to bring a maritime case in a non-maritime court (state court or federal court at law, assuming an alternative basis for federal jurisdiction), but the right of the litigants to take advantage of the procedural differences between a federal court "in admiralty" and that of the non-maritime court. See 1 Robert Force and Martin J. Norris, *The Law of Maritime Personal Injuries*, § 1:6 (5th ed. 2013); 1 Thomas J. Schoenbaum, *Admiralty and Maritime Law* §§ 4–4, 21–1 (5th ed. 2014). However, regardless of the court in which the case is brought, maritime substantive law is applicable. *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 864, 106 S. Ct. 2295, 2298–2299, 90 L. Ed.2d 865 (1986); Victory Carriers, 404 U.S. at 204, 92 S. Ct. at 420–421; *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S. Ct. 406, 408–409, 3 L. Ed. 2d 550 (1959).

*Bourgeois v. Weber Marine, LLC*, 80 F. Supp. 3d 721, 724 (M.D. La. 2015); *see also Bisso*

*Marine Co. v. Techcrane Int'l, LLC,* No. 14-0375, 2014 WL 4489618, at *4 (E.D. La. Sept. 10,

2014) ("For centuries the savings clause has provided a maritime plaintiff with three options: (1)

sue in admiralty in federal court under admiralty jurisdiction, (2) sue at law in state court, or (3)

sue at law in federal court "if he can make proper parties to give that court jurisdiction of his

case'." (quoting *The Belfast*, 74 U.S. 634 [624], 644 [7 Wall. 624, 19 L. Ed. 266] (1868)).

There is thus a " ' recurring and inherent conflict' between the exclusive jurisdiction

vested in admiralty courts by the Limitation of Liability Act  and the common law remedies

embodied in the saving to suitors clause of 28 U.S.C. § 1333." *Texaco, Inc. v. Williams*, 47 F.3d

765, 767 (5th Cir. 1995) (citations omitted) (quoting *In re Dammers & Vanderheide &*

*Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2d Cir. 1988)).

Petitioners argue that the failure of "**all** claimants [to] stipulate that the federal court has

exclusive jurisdiction over the issue of limitation and they will not seek to enforce an award in

excess of the value of the vessel until the limitation issue has been decided by the federal court"

is fatal to Standridge's motion. (Doc. 61 at 6 (citing *Odeco Oil & Gas Co.*, 74 F.3d at 674).) An

identical argument was made in *Archer Daniels Midland* to which the court responded:

> But the movants do not ask to proceed in state court simultaneously with the
> limitation proceeding; nor do they threaten the Court's exclusive jurisdiction over
> limitation issues. And as the shipowners' rights to limitation will be decided first
> while claimants' state court cases are stayed, claimants will not be able to seek to
> enforce a damage award in excess of the limitation fund before limitation rights are
> adjudicated.

*Archer Daniels Midland*, 2020 WL 1889123, at *4.

Thus, this motion requires the Court to make a discretionary call. In exercising its

discretion, the Court has at least four options to resolve the tension between the Limitation of

Liability Act (requiring a bench trial) and the savings to suitors clause (allowing for state court

remedies including a jury trial). First, the Court could grant Standridge the relief she asks for, i.e. try the exoneration and limitation of liability issues and, if limitation is denied, lift the stay and allow Standridge to try the fault of additional parties, the relative degrees of fault and damages in state court before a jury. *See, e.g., Obfjell Chemical Tankers*, 471 F. Supp. 3d 790; *In re Double C. Marine LLC*, 2019 WL 1495754.

However, this course of action would not affect the claims of the other parties who have chosen to try their claims in this proceeding. Therefore, if the Court chose this first option, after trying exoneration and limitation issues, it would still need to try the cross claims between CJM and Yazoo, the third party claims against JML, the apportionment of fault as among CJM, Yazoo, Wright, and JML, and the damages of Wright and CJM.

A second option is to partially grant Standridge's motion, and order that the bench trial in this matter be limited to exoneration, limitation, and apportionment of fault and allow Standridge to pursue only her damages claim in state court if limitation is denied. This is what Judge Vance ordered in *Archer Daniels Midland,* 2020 WL 1889123, at *3–4.[3] By deciding exoneration, limitation and apportionment first and while the state court action is stayed, the vessel owners' limitation rights would be protected. In this scenario, there would necessarily be a second trial in state court on Standridge's damages.

The third option, the one proposed by CJM and Yazoo, is to deny Standridge's motion outright and order all issues, including the damages issues arising from the death of Lloyd Standridge, to be tried to the Court. This was the course chosen by Judge Barbier in *In re*

---

[3] Judge Vance specifically rejected Plaintiff's request that "apportionment of fault [be] decided in the separate damage phase" because the Court found "this inefficient. As the major actors will be before the Court in the limitation trial, and the Court will receive evidence permitting it to rule on apportionment issues at the same time it rules on liability and limitation, combining the apportionment determination is consistent with Rule 42." *Archer Daniels Midland,* 2020 WL 1889123, at *3.

*Bertucci Contracting Co., LLC*, 2015 WL 114174, at *4 (Barbier, J.) (denying bifurcation because, "[in order for] claimants to prove Limitation Petitioners' alleged negligence they will be required to present evidence and testimony identical to that they will use in the damages portion of the case."); *see also In re Diamond B Marine Serv., Inc.,* 2000 WL 37987, at *2 (". . . there is quite a bit of evidence which will inevitably overlap with regard to the issues of damages, causation and liability. Under the circumstances separate trials will be counter [to] the ends of justice and cause multiplication of proceedings, inconvenience to the parties in terms of a multiplication of the proceedings as well as the expense involved in preparing for separate proceedings.")

There is potentially yet a fourth option:

> Limitation actions and personal injury or wrongful death actions may be tried simultaneously [in federal court] if the court decides to proceed in that fashion. When that occurs, the limitation issues are kept from the jury in the spirit of the concursus procedure and the traditional admiralty claims also will be heard without a jury trial.

14A Arthur R. Miller, *Federal Practice and Procedure (Wright & Miller)* § 3672 (4th ed. 2021).

This procedure was followed by this court in *In re Am. Boat Co. LLC*, 2017 WL 2120067, at *2 (Dick, J.). Other courts have done the same. *In re Crescent Energy Servs., LLC*, No. 15-5783, 2015 WL 7574771, at *4 (E.D. La. Nov. 25, 2015) ("request to bifurcate trial between the bench and a jury in this forum is granted."); *Complaint of Poling Transp. Corp.*, 776 F. Supp. 779, 1992 A.M.C. 1075 (S.D.N.Y. 1991) ("The proper approach here is to empanel a jury at the outset and allow trial to proceed on issues pertaining both to limitation and the common law claims.").[4] *See also* 2 Robert Force & Martin J. Norris, *The Law of Seamen* § 30:92

---

[4] In *Poling*, the individual claimants asked for relief identical to that sought by Standridge here, i.e. for the Court to dissolve the stay at the conclusion of the limitation trial so he could pursue his claim in state court. In the alternative,

(5th ed. 2020). In all three of the cited cases, the personal injury claimants requested that, once exoneration and limitation issues were decided, the court lift the stay and allow them to proceed before a state court jury to resolve all remaining matters. [5] That request was denied.

In balancing the equities in this case, the Court feels that the second option strikes the fairest balance. The Court will try exoneration, limitation, and apportionment of fault in the same proceeding. Because only Standridge filed suit in state court or requested a jury, the Court will necessarily receive and consider all evidence of every aspect of Wright's' wrongful death claim as well as the property damage claims of Yazoo, the cross-claims between CJM and Yazoo, and the third party claims against JML. To allow Standridge to return to state court following the exoneration/limitation trial to try the fault of additional parties, the relative degrees of fault and Standridge's damages (the solution proposed by Standridge) would be inefficient and subject Yazoo and CJM to separate, duplicative, and expensive liability trials. This would be inconvenient and would not serve judicial economy. As the court said in *Archer Daniels Midland*, "As the major actors will be before the Court in the limitation trial, and the Court will receive evidence permitting it to rule on apportionment issues at the same time it rules on liability and limitation, combining the apportionment determination is consistent with Rule 42." *Archer Daniels Midland,* 2020 WL 1889123, at *3.

On the other hand, the Fifth Circuit has explained that "[t]he saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice." *Odeco Oil & Gas Co.*, 74 F.3d at 674; *see also In re Double C. Marine LLC*, 2019 WL

---

they asked to be allowed to pursue their claims in federal court with a jury. *Poling*, 776 F. Supp at 781. In the further alternative, they argued the court "must empanel a jury in the limitation proceedings." *Id.*

[5] *Cf. In re Marquette Transp. Co. Gulf-Inland, LLC*, No. 13-6351, 2014 WL 6389978, at **3, 4 (E.D. La. Nov. 13, 2014) where the personal injury claimant moved for a bifurcated trial but requested that the trial on his Jones Act and general maritime law claims be tried to a *federal* jury following trial of the limitation issues.

1495754, at *2. It is true that this Court could preserve Standridge's jury right by following the

course set by this Court in *Matter of Am. Boat* and require Standridge to try her damages claim

before a federal jury. But by allowing Standridge to return to state court to try her damages, this

Court would be honoring not only Standridge's right to try damages before a jury but,

importantly, to do so in a state court forum.

The Supreme Court has made clear that the remedies saved to suitors like Standridge by

way of 28 U.S.C. §1333 include not merely the right to have her case tried to a jury but also

includes the right to all other remedies available in the state forum. The Court described as a

"flawed premise" the notion "that the saving to suitors clause reserves to claimants only the right

to receive a jury trial." *Lewis*, 531 U.S. at 453, 121 S. Ct. at 1003.[6] Rather, the Court

> . . . explained that the [saving to suitors] clause extends to all means other than
> proceedings in admiralty which may be employed to enforce the right or to redress
> the injury involved. Trial by jury is an obvious, but not exclusive, example of the
> remedies available to suitors. ***
>
> In sum, this Court's case law makes clear that state courts, with all of their remedies,
> may adjudicate claims like petitioner's against vessel owners so long as the vessel
> owner's right to seek limitation of liability is protected.

*Id.*, 531 U.S. at 454–55, 121 S. Ct. at 1004-05 (cleaned up).

In this case, the CJM and Yazoo's right of limitation will be protected by trying

limitation first and freeing Standridge to seek damages in state court only if limitation is denied.

Because Standridge's state court action would be limited to the issue of her damages, there

would be little if any duplication.

---

[6] Indeed, the state court remedies sought by the claimant did not include a jury trial since he had not asked for one.
*Lewis*, 531 U.S. at 441, 121 S. Ct. at 997 ("Petitioner did not demand a jury trial in state court.")

## IV.    CONCLUSION

Accordingly, Standridge's *Motion to Bifurcate* (Doc. 54) is **GRANTED IN PART** and **DENIED IN PART**. The issue of liability, limitation and apportionment of fault will be tried to this Court in connection with the limitation proceeding. If limitation is denied and Standridge is found entitled to damages, the Court will dissolve the limitation injunction and permit Standridge to try her damages case in state court. All other issues regarding the other parties will be tried in the bench trial.

Signed in Baton Rouge, Louisiana, on <u>June 29, 2021</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**